## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| DANIEL BOUCHARD, | ) |
| Plaintiff | ) ) ) |
| v. | ) ) |
| AG WORLD SUPPORT SYSTEMS, | ) ) |
| Defendant | ) ) |

### COMPLAINT AND DEMAND FOR JURY TRIAL
### 5 M.R.S. § 4572
### 5 M.R.S. § 4633 and 26 M.R.S. § 833

NOW COMES Plaintiff Daniel Bouchard, through counsel, who complains against Defendant Ag World Support Systems as follows:

### INTRODUCTION

1. Plaintiff brings this action against his former employer to recover damages in the form of compensation, damages, punitive damages, and equitable and other relief relating to discrimination in employment pursuant to 5 M.R.S. § 4572, 26 M.R.S. § 833, and 5 M.R.S. § 4633.

### PARTIES AND JURISDICTION

2. Plaintiff Daniel Bouchard is a resident of Caribou, Maine.

3. Defendant Ag World Support Systems is headquartered in Moses Lake, WA and operates a place of business in Easton, Maine.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331.

## FACTS COMMON TO ALL COUNTS

5. Since 2008, Defendant has maintained an agricultural inspection plant in Easton, Maine overseen by Facility Supervisor David Saucier. Upon information and belief, Defendant employs well over 500 people in the United States and worldwide.

6. Plaintiff was hired by Defendant as an Agricultural Inspector in April 2010.

7. In addition to employing a Facility Supervisor, Defendant employed a shift supervisor responsible for daily oversight of the Easton-based employees.

8. During the first few months of Plaintiff's employment, his shift supervisor was a man by the name of Ron Doody.

9. When Mr. Doody left, Joanne McMann became the shift supervisor.

10. On several occasions before and after she became the shift supervisor, Ms. McMann sexually harassed Plaintiff by, among other acts, rubbing Plaintiff's chest with her hands, grabbing and pinching Plaintiff's buttocks, rubbing her chest on Plaintiff's back, putting her hands under Plaintiff's shirt, grabbing his belt, attempting to pull down Plaintiff's pants, whispering unwanted vulgar comments into Plaintiff's ear about what she would like to do to him sexually, openly talking about her personal sex life with Plaintiff, propositioning Plaintiff repeatedly, and asking other employees under her supervision if they wanted to see how red she could make Plaintiff's face turn as a result of one or more of these acts.

11. Ms. McMann's words and conduct were witnessed by Mr. Doody (before he left) as well as by Plaintiff's co-workers. As shift supervisor, Mr. Doody did not reprimand Ms. McMann or take any action to stop the harassment.

12.     Plaintiff was extremely upset about Ms. McMann's conduct.  He was humiliated and degraded.  He became anxious and depressed and was frequently sick to his stomach before, after, and while at work.

13.     In October 2011, one of Plaintiff's co-workers urged him to report the offensive conduct to Mr. Saucier.  Plaintiff was hesitant to make the report himself because he was concerned that Ms. McMann would retaliate against him.  However, Plaintiff's girlfriend was aware of the toll the harassment was taking on him and made a phone call on Plaintiff's behalf to Mr. Saucier to report the sexual harassment.

14.     The report of sexual harassment to Mr. Saucier led to an investigation.  Several of Plaintiff's co-workers confirmed the harassment when questioned.

15.     Despite confirming reports of unwanted sexual harassment of a subordinate by a supervisor, Defendant did not take meaningful action against Ms. McMann or terminate her employment.  She remained Plaintiff's supervisor until she was terminated for unrelated reasons in 2012.

16.     While no further incidents of sexual harassment took place after October of 2011, Plaintiff was subjected to retaliation and further workplace hostility.

17.     Mr. Saucier told Plaintiff that he was not to discuss the investigation or the harassment with anyone, and if he did so, his employment would be terminated.

18.     After Plaintiff reported the harassment, Ms. McMann made at least two false reports that Plaintiff was smoking on company grounds, which would have been a violation of company policy.  Plaintiff notified Mr. Saucier that the reports were false and that Ms. McMann was retaliating against him.  Plaintiff's complaints were ignored.

19. On December 22, 2011, Plaintiff filed a charge of discrimination with the Maine Human Rights Commission alleging sexual harassment and retaliation.

20. The Commission sent a copy of Plaintiff's charge to Ag World's headquarters. Mr. Saucier and others in Maine were aware of the charge.

21. On March 17, 2012, Plaintiff was assigned to work his shift with Mr. Saucier. While Mr. Saucier was alone with Plaintiff, Mr. Saucier pulled a screw out of his pocket and said "If you want to retaliate against someone, you stick this in someone and turn it." Plaintiff was shocked and felt threatened by what Mr. Saucier said and did.

22. Mr. Saucier subsequently questioned Plaintiff's work by pulling him into the office to warn him, without any facts or data to support the allegations, that Plaintiff needed to "watch his (production) numbers".

23. Mr. Saucier subjected Plaintiff to an unreasonable number of "quality assurance" tests. In the first eleven months of Plaintiff's employment, he was subjected to a single quality assurance test. After March 2012, Mr. Saucier ordered Plaintiff to undergo five quality assurance tests in five consecutive days. Plaintiff passed all of the tests, but the unnecessary testing and increased scrutiny was very stressful for Plaintiff.

24. Mr. Saucier also subjected Plaintiff to unnecessary scrutiny with respect to use of sick days and time off. Plaintiff's attendance had never been an issue prior to the complaint about harassment and retaliation. After the complaint, the occasional sick day or late arrival became a reason to subject Plaintiff to reprimands and discipline.

25. Plaintiff was intimidated by Mr. Saucier's actions and believed that Mr. Saucier was looking for an excuse to terminate Plaintiff's employment. For example, Mr.

Saucier provided Plaintiff with a "final warning" about attendance despite the fact that the two absences referenced by Mr. Saucier were both emergency medical situations and Plaintiff had contacted Ag World to inform them that he would not be able to work.

26. Fed up with the retaliation and unfair treatment and plagued by uncertainty and stress, Plaintiff was compelled to resign from his job on November 2, 2012.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

27. On December 22, 2011, Plaintiff filed a Charge of discrimination with the Maine Human Rights Commission pursuant to 5 M.R.S.A. § 4611. Equal Employment Opportunity Commission (EEOC) retained "dual jurisdiction" of the complaint.

28. On August 20, 2012, the Maine Human Rights Commission issued Plaintiff a so-called "right to sue" letter, authorizing Plaintiff to file a civil action. EEOC issued a similar "right to sue" letter on October 12, 2012.

29. Plaintiff has exhausted his administrative remedies prior to bringing a civil action under the Maine Human Rights Act and has otherwise complied with all administrative conditions precedent prior to bringing this action.

## COUNT I

**Violation of Maine Human Rights Act, 5 M.R.S. § 4572**
**Employment Discrimination: Sexual Harassment/Hostile Work Environment**

30. Plaintiff hereby repeats, realleges, and incorporates by reference the forgoing paragraphs 1 through 29 of this Complaint.

31. Plaintiff was subjected to unwanted sexual comments and unwanted sexual touching by a co-worker.

32. The unwanted sexual advances, comments, and touching continued and intensified after the co-worker became Plaintiff's supervisor.

33. The harassment and workplace hostility was severe and pervasive so as to alter the conditions of Plaintiff's employment and create an abusive work environment.

34. Plaintiff found the conduct offensive and abusive, and any reasonable person would find such conduct offensive and abusive.

35. Defendant knew the harassment occurred but did nothing to stop it. Following reports of the harassment, Defendant investigated and verified that the harassment occurred but took no appropriate remedial action.

36. Plaintiff has suffered damages in an amount to be proven at trial.

37. Based on all of the foregoing, Defendant is liable as an employer for the acts and omissions of its employees and supervisors.

WHEREFORE, Plaintiff demands judgment in his favor against Defendant in an amount that is reasonable, which includes compensatory damages, back pay, punitive damages, attorney's fees, interest, costs, and such further relief deemed just and proper.

## COUNT II

**Violation of Maine Whistleblower's Protection Act, 26 M.R.S. § 833**
**Employment Discrimination: Whistleblower Retaliation**

38. Plaintiff hereby repeats, realleges, and incorporates by reference the forgoing paragraphs 1 through 37 of this Complaint.

39. Plaintiff engaged in activity protected by the Maine Human Rights Act when he informed Defendant of sexual harassment and workplace hostility.

40. Following reports to his employer, Plaintiff was subjected to adverse employment action, to wit: unwarranted threats of termination, false reports made against him, baseless increased scrutiny regarding his production and use of sick time, intimidation, and increased workplace hostility, all of which compelled Plaintiff to resign.

41. A causal nexus exists between Plaintiff's protected activity and the adverse employment action to which he was subjected.

42. Defendant's actions violate the Maine Whistleblower's Protection Act, 26 M.R.S. § 833, and by extension, the Maine Human Rights Act, 5 M.R.S. § 4572.

43. As a direct and proximate result of Defendant's actions set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment in his favor against Defendant in an amount that is reasonable, which includes compensatory damages, back pay, punitive damages, attorney's fees, interest, costs, and such further relief deemed just and proper.

## COUNT III

### Violation of Maine Human Rights Act, 5 M.R.S. § 4633
### Unlawful Retaliation, Interference, Coercion, or Intimidation

44. Plaintiff hereby repeats, realleges, and incorporates by reference the forgoing paragraphs 1 through 43 of this Complaint.

45. By filing a charge of discrimination with the Maine Human Rights Commission on December 22, 2011, and thereby opposing unlawful acts by his employer, Plaintiff engaged in activity protected by the Maine Human Rights Act.

46. After becoming aware that Plaintiff filed a charge of discrimination, Defendant's retaliation against Plaintiff continued and intensified. Defendant's words and actions interfered with Plaintiff's right to be free from discrimination, harassment, or retaliation and served to intimidate Plaintiff, compelling Plaintiff to resign.

47. A causal nexus exists between Plaintiff's protected activity and the adverse employment action to which he was subjected.

48. Defendant's actions violate the Maine Human Rights Act, 5 M.R.S. § 4633.

49. As a direct and proximate result of Defendant's actions set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment in his favor against Defendant in an amount that is reasonable, which includes compensatory damages, back pay, punitive damages, attorney's fees, interest, costs, and such further relief deemed just and proper.

DATED: October 8, 2013

                Respectfully Submitted,

                */s/ James A. Clifford*
                James A. Clifford, Esq., Me. Bar No. 8630
                CLIFFORD & CLIFFORD, LLC
                62 Portland Rd., Suite 37
                Kennebunk, Maine 04043
                Tel: (207) 985-3200
                james@cliffordclifford.com

                ATTORNEY FOR PLAINTIFF